All right. Our final case for this morning is, in fact, still morning, is Martinez v. Cahue. It's Mack. May it please the court, Ty'Anda Mack for Appellant Jaded Martinez. The district court made two fundamental legal errors when making its decision. First, it failed to recognize a sole custodian, Miss Martinez, under Illinois law, had the right to change the child's habitual residence solely. Second, in the alternative, the district court failed to recognize that Mr. Cahue's failure to exercise his legal remedies allowed the child's habitual residence to change to Mexico. When making its decision, the district court decided that the child's habitual residence was a key factor in this case. And the case is- So, could I ask you this question? This is obviously a case where the child's initial trip, I'll say, to Mexico was not a wrongful removal from the United States or anything like that. The mother had sole custody under Illinois law because the parents were not married. Is it your view, under Illinois law, that the district court was not entitled to take Mr. Cahue's intent into account? The district court's looking for joint intent to change the habitual residence. I'm trying to nail down whether it's your position that that's a legal error. Yes, it is my position that that is a legal error. The Hague Convention, under Article V, makes a distinction between parents having rights of custody and parents having rights of access. Parents with rights of custody also have the right to change the child's habitual residence or decide the habitual residence is actually what the Hague Convention states. Because Mr. Cahue did not have rights of custody, he did not have a right to decide. And this court, in its decision in Redmond, actually said that the right to change the child's habitual residence, the intention that matters, is that of the person or persons having the right to make that decision. In this case, that was Ms. Martinez because she had sole custody under Illinois law. So the only way to have, I mean, they did have this side agreement about visitation rights and the like. But under Illinois law, the only way to change her sole custody would have been to go to an Illinois court? That's correct, Your Honor. Mr. Cahue had the right to petition an Illinois parentage court, some kind of custody proceedings, and he failed to do so. So at the time. So his acknowledgment of paternity by itself is not enough. No, it is not. And there's actually Illinois Supreme Court decisions that say that visitation is not automatically granted. So it can't be said that custody is automatically granted just because parentage is presumed through the voluntary acknowledgment. So I guess there are a couple of things. Is it clear under Illinois law that he doesn't have at least some say? Because the district court resolves some credibility matters adversely to your clients, such as whether there was a conversation in the kitchen of Ms. Martinez's mother in which Mr. Cahue agreed to the move. We have to assume that none of that happened, right? Because that's a credibility decision. We're not going to second guess it. Yes, Your Honor. Under Illinois law, the custodial parent does have the right to change the child's residence and move out of the state of Illinois. But you were arguing more an acquiescence position. Has your position changed at this point? We haven't. We've argued all along that Ms. Martinez had the right to change the child's residence. And furthermore, that Mr. Cahue did acquiesce to her decision. So you're saying even if you lose on the acquiescence point, you still have the matter of right point? Absolutely. And also the fact that Mr. Cahue failed to exercise his remedies in this court found that that also allows the child's habitual residence to change. Right, so Mr. Cahue does a lot of investigation, but he doesn't actually file anything formally. He just keeps the child. That's correct, Your Honor. So then there's an issue about whether the child has become well settled since his wrongful, let's assume his wrongful retention.  We disagree that the child is now settled in Illinois. He is exhibiting extreme signs of psychological stress. He's being alienated from his mother. He's in need of counseling that he's not receiving. And he's also not having any contact with his maternal family that he lived with all up until the time that he moved. And so we argue that considering those factors, which must be considered under the Supreme Court's decision in Abbott, that the child is not settled. And even if he is, the court must consider the equities. The well settled exception is not a requirement. It only opens up the decision of the court when determining return, whether they can consider the child's interests as well. And so in the interest of Ms. Martinez's custody rights, in the interest of her being able to have a relationship with her child, in the interest of discouraging the type of behavior that Mr. Cahew participated in, and deceiving Ms. Martinez, and attempt to violate her custody rights, in lieu of actually engaging the legal remedies that were available to him, it's very necessary that this child is returned to his mother's care in Mexico. So the other point, I think, that influences the district court judge is the fact that the child, even before the wrongful retention, had spent significantly more of his life in Illinois than he had in Mexico. So what about that factor? It's funny, because in that opinion, the district court actually pointed out that the length of time that the child has spent in a place should not be, I think he said, considered. In the Redmond decision, it was said that it shouldn't be determinative. Because Ms. Martinez had the right to change the child's habitual residence, the court had found that the child had sufficiently acclimatized to Mexico. His habitual residence was Mexico. It's not a compare which one or that. Under the Redmond test, the factors were met, and the child's habitual residence was Mexico. And if the decision was that it wasn't a shared intent, and that was what it was focused on, the rest of that really shouldn't be relevant. And to what extent are you making a policy argument based on the purpose of the convention, which is to allocate the venue, if you will, for deciding these things, for trying to regularize and deter self-help, I guess I'll say? The policy is that when there is some kind of dispute over where the child belongs, the Hague Convention provides a remedy for that. The goal is to discourage self-help in abducting a child and taking them someplace else. Mr. K, he took the child back to somewhere that he had previously lived in, was settled, and he shouldn't be encouraged in doing that either. That type of behavior should be discouraged. Furthermore, it's had detrimental effects on the child. Obviously, it's had detrimental effects on my client. And so we don't want these kind of things where it's a let's take the child back and forth until we can determine the habitual residence. He should have pursued his legal remedies up front. Not only did Mr. K have remedies under the Hague Convention, he also had remedies under Illinois law, was very aware of those remedies, and still chose to pursue neither and engage in self-help. He had even told the State Department that he had entered a visitation agreement with the mother, but then went around and did this anyway. Instead, he had this plan before he had sent that email to the State Department. That's extremely troubling, and policy strongly encourages discouraging this type of behavior. Okay, well, if you'd like to save a little rebuttal time, feel free if you have anything else to say, but I would if there's no more questions. Thank you. All right, thank you. Mr. Schaefer. Good morning. If it pleases the Court and counsel, David Schaefer on behalf of the respondent appellee. I disagree vehemently with my learned counsel about a non-custodial parent's rights to have a say what state, let alone what country the child lives in. So what law are you relying on for that? Because my own look at Illinois law suggests that if there's never been any change, that the custody lies with the mother in this situation, and the father, in fact, does not have. Regardless of whether a parent has sole custody, and just for the record, there is no more custody now. It's allocation of parental responsibilities. Well, whatever. I mean, we have like the 2009 in-rape parentage of RBP case from the Illinois Appellate Court. She doesn't have to get permission to relocate outside with no custody order. Actually, Your Honor, reading that case, she does need permission. And I've submitted separately a motion for sanctions for misstatement of the law. Yeah, I thought that was extreme. But anyway, we'll worry about that on our own. Whether or not, and if the Court, if it pleases the Court to further brief this, whether or not a parent had sole custody or is not the custodial parent, they still have a say in what state and what country the child can be raised in. Give me a citation of law or case. Because Illinois does not have a naexia right, such as the previous one. RBP, it said that with the new statute, the mother, the custodial parent needs to petition the Court for leave to remove the child. But the new statute wasn't enacted until 2016. This is the old statute, under the old statute. RBP was decided under the old statute. Right, that's the thing. The new statute is even stronger. The statutory length scheme has not changed. By signing the voluntary acknowledgement of paternity, he's a legally recognized parent. He's a parent, but whether he, as a parent, has a right to veto the choice of, I'll use convention terms, habitual residence is a separate term. That requires a kind of naexia right, which Illinois doesn't have. It does have a naexia right. The law is that the custodial parent needs to petition the Court for leave to remove the child. Even now, the Parentage Act. I don't read it the same way. Are you looking at 13.5A? 13.5A provides a mechanism to enjoin the removal or compel the return if there's an adjudication pending, but there was no adjudication pending. The most troublesome thing about your client is the degree to which he engaged in self-help. Instead of going to the courts to get a proceeding pending, there, of course, there's a huge interest on the part of the Court not to have its processes undermined, but your client didn't do that. He just kept the child after deceiving the mother about whether he was going to be sent back to Mexico. Judge, if I may, permit me an analogy. You have a neighbor who's always borrowing your prize tools, and then counsel would prefer that you litigate in court for your neighbor to get the tools back. That's not a good analogy. Okay. I think Redmond is a red herring. It is entirely different than the case on point here. I will be happy to brief it, for your honor, if it's depending on that, but a parent, whether custodial or not custodial, has a say in where the child, what state and what country, especially what country the child can be raised in,  In the law, and again, I'd be happy to- I don't need more briefing. You had a chance to brief, but the statute that you're relying on is a statute that operates entirely in the context of a court proceeding. The parent without custody doesn't have a right to determine the child's location unilaterally. He has only the right to ask the court to make that decision, and then to supervise whatever decision the court has made. So I don't see how her decision to move the child down to Mexico, even, and then I accept the district court's findings that this was not something he knew about, but I don't see where that violates any part of Illinois law. The Illinois Marriage and Family, Marriage Act, which is applicable now to non, which has been applicable at that time also, made applicable, requires for removal for the custodial parent to petition the court for leave to remove the child from the state. That is a statutory scheme. I am not sure it operates here. The RBP case indicates that it does, and there's language in there saying, if mom interprets this, that she can just take the child without petitioning the court or getting permission, then it's a complete abomination of what the legislative intent was. Yes, there is a remedy for the father to go to court to seek an injunction preventing her from removing or coming back, but- But there's no custody order here. She just is, by operation of law, the custodial parent before he starts filing the convention. But they have equal rights. No, they don't. Actually, that's maybe where we disagree. Okay, he has the right to determine she can't, the law is she can't, the Illinois Marriage and Dissolution of Marriage Act, both then and now, which at this time incorporated the- But he never went to court to enjoin her from removing the child from Illinois. Your Honor, he didn't have to. The Illinois Marriage and Dissolution of Marriage Act, the removal section requires a custodial parent to seek permission from the court to remove before they can remove a child, even within Illinois for a certain distance, regardless when the child was here for- And so you would like us to adopt a rule that just says, retain children, don't use the convention procedures, don't use the procedures, reward the parent who disregards the convention. No, I'm not saying it here. I don't want the Hague Convention to reward what the mother did, which was snooker my client into signing an agreement. The only agreement- He wasn't snooker. The child lived in Mexico for an entire year. He could have gone to court in Illinois at any time after it becomes clear that the child is down in Mexico. I don't understand at all why he was disabled from doing that. He's in contact with the State Department. He's talking to all sorts of people. He has all sorts of remedies. As was mother. Well, so, I mean, so fine, you know. But this- He's not snookered. He knows that they're there. He knows that the child doesn't come back. It's very clear to him as of the time the school year starts. He didn't want to bring him back during the school year. Well, that's- And this, this, the other- He could have gone to court though and gotten these things addressed in some regular fashion. I understand, Your Honor. He did then go to court and mother went to court and acquiesced to the Cook County Circuit Court's jurisdiction. It's being litigated here. The purpose of the Hague Convention, the sole purpose, the main purpose- And it's supposed to be, if the child's, it's supposed to be litigated where the child's habitual residence is. That's why we're talking. Yes, it is. That is what the Hague Convention says. If the habitual residence is Illinois, then it should be litigated in Illinois. If the habitual residence is Mexico, it should be litigated in Mexico. We had a case where somebody's habitual residence was the state of Western Australia. I mean, it just depends. Mother's decided both parties are litigating in Cook County. But she's not doing it without objection. I mean, I- No, she initiated her own proceedings. Well, of course. I mean, but that's not without objection. And we also have the acclimatization argument. She waited a year. She waited 14 months before bringing any proceedings in Illinois or the Hague Convention. Because she thought, she had brought proceedings in Mexico, though, where it's her position the child's habitual residence is. She's abandoned those proceedings. I just said- I don't understand. I'll ask Ms. Mack. I just don't think it's, this is what the Hague Convention is about. This was the child's habitual residence. It's in opposite to Redmond. That's a factual question. Correct. The question is whether the district court used the right legal structure to answer that factual question. Correct. But comparing the two fathers in Redmond, and here is a red herring, Redmond had no rights under Irish law. There was no voluntary acknowledgement of paternity, and there was no- No, there's some differences. That's right. Okay. Any other questions? Thank you. Thank you. Anything further, Ms. Mack? Your Honor, your understanding of RBP couldn't be more spot on. It's absolutely correct that the mother is not required to seek leave of court before moving out of state with the child. I believe counsel is referring to a very long quote of the Fisher decision that is also an RBP, that then the RBP decision goes on to explain how non-custodial mothers are distinguishable from the Fisher case, because there were pending proceedings in the Fisher case. There must be some kind of standing court order or pending action in the parentage courts in order for the mother to seek leave. Otherwise, she does have the right to remove the child from the state of Illinois. Counsel also mentioned that she moved to a foreign country as to say that was somehow worse than moving to another state, and that's absolutely not true. The Uniform Child Custody Jurisdiction and Enforcement Act considers a foreign country the same as it would consider another state. And so again, Ms. Martinez had the right to move the child to Mexico. Counsel also made a number of references to the Marriage Act, which doesn't apply because there is a Parentage Act. There are specific provisions of the Marriage Act that the Parentage Act recognizes apply, but none of those apply in this proceeding. Okay, so. So with that, we ask that this court reverse the district court's decision. Thank you. All right, thanks to both counsel. We'll take the case under advisement, and the court will be in recess. Thank you.